## IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

MICHAEL TAYLOR,

                                 Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA,
INC., a New York Corporation and
SAMSUNG ELECTRONICS CO., LTD, a
Foreign Limited Liability Company,

                            Defendants.

                    Case No. 3:16-CV-50313

## DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

Defendants SAMSUNG ELECTRONICS AMERICA, INC. ("SEA") and SAMSUNG ELECTRONICS CO., LTD. ("SEC") (collectively, "Defendants" or "Samsung"), by and through their attorneys, state as follows for their Memorandum in Support of Renewed Motion to Compel Arbitration and Stay All Proceedings:

## I.    INTRODUCTION

In November 2016, Defendants filed their initial Motion to Compel Arbitration and Stay All Proceedings [Dkt. #12, #17]. After motion practice and limited discovery into arbitrability,[1] the inevitable outcome remains unchanged: The Federal Arbitration Act ("FAA") and hornbook Seventh Circuit and Illinois law require Plaintiff to bring his claims in arbitration pursuant to the Arbitration Agreement that accompanied his Galaxy Note7 smartphone ("Note7").

The purchase and use of Plaintiff's Note7 was subject to Samsung terms and conditions, conspicuously disclosed multiple times, including on the external packaging for the Note7 and in the Health & Safety and Warranty Guide ("Warranty Guide") included in the box, online, and on

---

[1] For a comprehensive chronology of the proceedings to date, including motions, hearings, and discovery, Defendants direct the Court to Sec. II ("Procedural History") of their Objections to Magistrate Judge's August 4, 2017 Order [Dkt. #59], which is hereby incorporated by reference.

the device itself. The outside of the box states that the Note7 is subject to "additional Samsung terms and conditions"; the Warranty Guide's title page discloses that it contains "important terms and conditions" that are "accept[ed]" by "using" the Note7; and the next page is titled "Legal Information" and discloses that those "terms and conditions" include an arbitration provision (the "Arbitration Agreement") from which consumers have 30 days to opt out by emailing or calling Samsung. The Arbitration Agreement requires Plaintiff to bring any claims against Defendants relating to the "sale, condition, or performance" of his Note7—such as those at issue here—in binding arbitration conducted under the rules of the American Arbitration Association ("AAA").

Under seminal Seventh Circuit precedent in *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) and *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), the Arbitration Agreement is plainly valid and enforceable. Indeed, the ***same*** Note7 Arbitration Agreement was recently enforced in *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035 (W.D. Wash. May 25, 2017), where the court compelled claims to arbitration pursuant to Washington and California law.[2] *Id.* at *4 ("reference to arbitration in the table of contents," with detail regarding arbitration and opt-out on the first substantive page of the Warranty Guide, was sufficient to place a "reasonable person … on notice of the arbitration agreement"). Likewise, in *McNamara v. Samsung Telecomms. Am., LLC*, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014), Judge Leinenweber held that an earlier (and far less prominent) arbitration agreement that accompanied the Galaxy S4 smartphone was enforceable because Samsung provided "reasonable notice of" and "a meaningful opportunity to reject the arbitration provision."[3] *Id.* at *2 (relying on *Hill* and

---

[2] In reaching its decision as to the Washington plaintiffs, the court applied the Seventh Circuit's reasoning in *Hill* and *ProCD*, which has been expressly adopted by the Washington Supreme Court. *See Schmidt*, 2017 WL 2289035 at *3 (discussing how the Washington Supreme Court, in *M.A. Mortensen Company, Inc. v. Timberline Software Corp.*, 998 P.2d 305, 308 (Wash. 2000), "relied on" *Hill* for its holding).

[3] *See also Sheffer v. Samsung Telecomms. Am., LLC*, No. CV 13–3466, 2014 WL 792124 (C.D. Cal. Feb. 6, 2014) (enforcing Galaxy S4 arbitration agreement); *Han v. Samsung Telecomms. Am., LLC*, No. CV 13–3823, 2014 WL

*ProCD*); *see also Falbe v. Dell Inc.*, No. 04-C-1425, 2004 WL 1588243, at *3 (N.D. Ill. July 14, 2004) (compelling arbitration based on "Terms and Conditions" document included with computer; "[o]ur analysis begins, and could end, with the Seventh Circuit's decision in *Hill*"); *Chamberlain v. LG Elecs. U.S.A., Inc.*, 2017 WL 3084270, *1 (N.D. Cal. June 29, 2017) (relying on *Hill* to compel arbitration based on arbitration provision in LG's smartphone limited warranty that came in the box). The same is true here.

As Plaintiff's claims indisputably arise out of his dissatisfaction with the sale, condition, or performance of his Note7, and he did not opt out of the Arbitration Agreement within 30 days of purchase, he is bound to arbitrate his claims. Regarding the scope of arbitrability, the Agreement clearly submits questions about scope to the arbitrator, meaning this Court should order arbitration after determining the Agreement is binding. But if this Court does evaluate whether the claims at issue here fall within the scope of the Arbitration Agreement, it should conclude that they plainly do. Thus, Samsung requests that this Court issue an order compelling Plaintiff's claims to arbitration and staying all proceedings pending the outcome of arbitration.

## II.  RELEVANT FACTUAL ALLEGATIONS

On or about August 16, 2016, Plaintiff alleges that his employer bought a Note7 cellular phone for him to use. First Am. Compl. ("FAC") [Dkt. #66], ¶ 8; Initial Compl. [Dkt. #1], ¶ 9. Plaintiff's carrier was U.S. Cellular. *Id.* On September 12, 2016, Plaintiff plugged the phone into its charger before he went to sleep. FAC [Dkt. #66], ¶ 10. Plaintiff alleges that he woke up the next day to find the phone on fire, and that he suffered injuries as a result. *Id.*, ¶¶ 11-14.

Plaintiff's Note7 was sold in a box that, on the outside, advises: "Device purchase subject to additional Samsung terms and conditions." Declaration of Tim Rowden ("Rowden Decl."), ¶¶

---

505999 (C.D. Cal. Jan. 30, 2014) (same); *Carwile v. Samsung Telecomms. Am. LLC*, No. 12-cv-5660-CJC, Dkt. No. 54, 2013 WL 11030374 (C.D. Cal. July 9, 2013) (enforcing Galaxy S2 arbitration agreement).

4-5, 14; Ex. 4. The box further invites customers to "visit Samsung.com" for "more information on your device." *Id.* On the inside, Plaintiff's box contained a Warranty Guide that prominently alerts users to those additional terms and conditions, including the Arbitration Agreement and 30-day opt-out period. *Id.*, ¶¶ 5-8. The Note7 Warranty Guide contains 25 numbered pages. Ex. 1. On the title page, in large bold type, the Warranty Guide discloses: "**This document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions.**" Ex. 1; Rowden Decl., ¶ 6.  On the very next page, before the Table of Contents, the Warranty Guide instructs users in bold, capitalized letters, under the heading "**Legal Information**," to "**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE**." *Id.* Directly below that language, the Warranty Guide states:

> **Samsung Limited Warranty** - This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE and your right to opt out of arbitration within 30 calendar days of the first consumer purchase. You may opt out by either sending an email to optout@sea.samsung.com with the subject line "Arbitration Opt-Out" or by calling 1-800-SAMSUNG (726-7864).** For more detailed procedures, please refer to the "Dispute Resolution Procedures and Arbitration and Opt-Out" section of the Limited Warranty.

*Id.*; Ex. 1. On the first numbered page of the Warranty Guide, a single-page Table of Contents refers the user to page 20 of the Warranty Guide for "**Health/Safety and Standard Limited Warranty Guide (Terms and Conditions of Sale)**" and page 21 for "**Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy**." Ex. 1, p. 1; Rowden Decl., ¶ 8. The full Arbitration Agreement beginning on page 21 states in all capitalized font: "ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY." Ex. 1, p. 21. The Agreement provides that "arbitration shall be conducted

according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes," and "[t]he arbitrator shall decide all issues of interpretation and application of this arbitration provision and the Limited Warranty." *Id.*, pp. 21-22.

The Arbitration Agreement contains a Texas choice of law clause. *Id.*, p. 21. The Arbitration Agreement defines "SAMSUNG" as SEA, and expressly applies "to claims against [SEA's] employees, representatives and *affiliates* if any such claim arises from the Product's sale, condition or performance." *Id.*, p. 22 (emphasis added). SEC is SEA's parent company. *See* SEA Corporate Disclosure Statement [Dkt. #16]; Rowden Suppl. Decl. [Dkt. #26].

The Warranty Guide also prominently discloses the 30-day opt-out provision on the first full page of text, Rowden Decl. ¶ 6, and in bold and partially-underlined type in the Arbitration Agreement: "**You may opt out of this dispute resolution procedure by providing notice to SAMSUNG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product.**" Ex. 1, p. 23; Rowden Decl., ¶ 8. Consumers can opt out within 30 days of purchase by email or toll-free number, and opting out carries no penalty: "**Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty.**" *Id.*

In addition to being repeatedly highlighted in the Warranty Guide, the Agreement was available in several other places. Rowden Decl., ¶ 4. It was on the phone itself, and the Warranty Guide instructs users how to access it. *Id.*, ¶¶ 6-7. It was set forth in full online at Samsung's website, and the Warranty Guide directs users to the link in two places. Ex. 1, second page & 20. And it was called out in the User Manual available on Samsung's website. Rowden Decl., ¶ 10.

## III.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") mandates that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "'liberal federal policy favoring arbitration,'" and courts must "enforce [arbitration agreements] according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A court must compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the agreement's scope. *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 886 (N.D. Ill. 2014). If the agreement submits the "arbitrability question itself" to the arbitrator, however, the arbitrator decides if a particular dispute falls within the agreement's scope. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-944 (1995). Finally, the FAA "requires a District Court to stay litigation upon the application of one of the parties if any issue involved in the suit is referable to arbitration." *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 985 (N.D. Ill. 2007).

With respect to validity, "[w]hen determining whether parties are bound by an agreement to arbitrate, courts apply 'ordinary state-law principles that govern the formation of contracts.'" *Hospira, Inc. v. Therabel Pharma N.V.*, No. 12-C-8544, 2013 WL 3811488, at *11 (N.D. Ill. July 19, 2013). An arbitration agreement need not be signed, or even be read, by the parties to be valid and enforceable. *E.g., NECAIBEW Rockford Local Union 364 Health and Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013) ("As a general matter, a party may become bound to an unsigned contract, including one that contains an arbitration clause, by its or its agent's conduct."). Controlling here, a party can manifest acceptance of an arbitration agreement even where it does not become aware of the terms of the agreement until after the purchase. *E.g., Hill*, 105 F.3d at 1148-49. The Seventh Circuit held in *Hill* that plaintiffs were bound by an

6

arbitration provision disclosed for the first time in the packaging of a computer they purchased. *Id*. at 1148-50. Because the terms in the box disclosed that a customer would have to return the computer within 30 days to reject the agreement, and because plaintiffs did not do so, the court enforced the arbitration agreement. *Id*.; *see also Concepcion*, 131 S. Ct. at 1750 (citing *Hill* for the proposition that consumer contracts are enforceable). The same is undoubtedly true here.

## IV. ARGUMENT

Through use of his Note7, and having not opted out, Plaintiff is bound to arbitrate his claims pursuant to the Arbitration Agreement that accompanied his Note7. *First*, under Illinois contract principles, a valid contract was formed between the parties to arbitrate Plaintiff's claims against Samsung. *Second*, whether Plaintiff's claims are covered by the Arbitration Agreement is for the arbitrator to decide; but in any event, the claims plainly fall within its scope. *Third*, even assuming Plaintiff did not personally purchase the phone, he is bound to the Agreement pursuant to related estoppel, agency, and third-party beneficiary doctrines.

### A. The Arbitration Agreement Is Valid

The Seventh Circuit and Illinois courts routinely hold that valid contracts are formed via the purchase and use of consumer products, and consistently enforce terms and conditions—such as warranties and arbitration agreements—that accompany consumer products. *See, e.g., ProCD*, 86 F.3d at 1451 ("so far as we aware no state disregards warranties furnished with consumer products"); *Hill*, 105 F.3d at 1148-1150[4]; *Carbajal v. H&R Block Tax Servs.*, 372 F.3d 903, 906 (7th Cir. 2004) ("what holds true for warranties holds true for arbitration" and "arbitration specified in a form contract must be treated just like any other clause of the form"). Indeed, the Seventh Circuit was one of the first to recognize the practical realities of modern consumer

---

[4] *Hill* was an appeal from the Northern District of Illinois, and applied Section 2-207 of the UCC in its analysis of contract formation, noting that Illinois had adopted the UCC. Thus, *Hill* reflects the law governing both the Seventh Circuit and Illinois with respect to in-the-box formation.

transactions and acknowledge the benefits of "accept-or-return" terms and conditions in contract formation—including arbitration agreements—that are regularly contained in product packaging and received after purchase. *Hill*, 105 F.3d at 1149 ("Customers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device. Competent adults are bound by such documents, read or unread."); *ProCD*, 86 F.3d at 1451 (printed terms inside box bind consumers who use the product after being given an opportunity to read and reject terms by returning the product).

The Arbitration Agreement at issue here was included in the Standard Limited Warranty that accompanied the Note7 and formed part of the bargain. It is undisputed that the Note7 was purchased for Plaintiff's use, and that he did in fact use it. *See* FAC [Dkt. #73], ¶ 8 ("Michael Taylor's employer purchased a Galaxy Note7 phone *for use by Michael Taylor*, an employee.") (emphasis added). By using the Note7, and not opting out of arbitration, Plaintiff became bound to the Arbitration Agreement under its express terms. *See* Ex. 1, title page & p. 23 (consumer accepts terms and conditions by using device, but noting he can opt out of arbitration, without penalty, via email or phone within 30 days of purchase). These were the same basic facts in *Hill*, where the Seventh Circuit enforced an arbitration provision included in the box of a computer purchased for the plaintiffs' use. 105 F.3d at 1148-50. Because the terms in the box disclosed that the consumer would have to accept the terms or return the computer within 30 days to reject the arbitration agreement, and because the plaintiffs did not do so, the court found the agreement enforceable. *Id.* Here, the Arbitration Agreement is actually ***more*** consumer-friendly than the one in *Hill* because it allows consumers to opt out of arbitration via email or toll-free call instead of requiring product return. The facts and law compel the same outcome as in *Hill*.

In *Schmidt v. Samsung*, the Western District of Washington recently agreed that the same Note7 Arbitration Agreement at issue here was enforceable. 2017 WL 2289035, at *2; *see also Chamberlain*, 2017 WL 3084270, *1 (compelling arbitration based on arbitration provision in LG's smartphone limited warranty that came in the box because "each of the three states relevant here has adopted the standard announced in *Hill*"). Further, in *McNamara v. Samsung*, Judge Leinenweber enforced a similar arbitration agreement relating to the purchase of a Samsung Galaxy S4 smartphone. 2014 WL 5543955, at *2. Citing *Hill* and *ProCD*, the court noted that "provisions contained within the packaging [a]re valid under the law of contracts provided there is an ability to reject," and the court enforced the agreement because Samsung gave "a meaningful opportunity to reject the arbitration provision." *Id.*

*McNamara* is also noteworthy because it involved a Galaxy S4 arbitration agreement that was far less conspicuously disclosed than the Note7 agreement at issue here. Here, unlike *McNamara*, Plaintiff's box states that the device is "subject to additional Samsung terms and conditions." Rowden Decl., ¶ 5. Unlike *McNamara*, the title page of the Note7 Warranty Guide advised Plaintiff that it contains "important terms and conditions" accepted by "using the device." *Id.*, ¶ 6. Unlike *McNamara*, the next page of the Note7 Warranty Guide is titled "Legal Information" in large, bold font and calls out the Arbitration Agreement and 30-day opt-out period. *Id.*, ¶ 6. And unlike *McNamara*, the single-page Table of Contents on the first numbered page of the Note7 Warranty Guide specifically references the Arbitration Agreement and opt-out policy and directs the user to the appropriate page for the full terms. *Id.*, ¶ 6.

These factual differences serve to reinforce that this is not a close case under controlling precedent, and that there is no principled basis to depart from the reasoning in cases like *Schmidt*, *Chamberlain*, and *McNamara* on these facts. After Samsung provided the Arbitration Agreement

9

with Plaintiff's Note7, and Plaintiff had the opportunity to review the terms—in hardcopy, on his device, or online—Plaintiff manifested his assent to be bound to the terms by using his device and not opting out of arbitration within 30 days of purchase. *See, e.g., Hill*, 105 F.3d at 1148; *McNamara*, 2014 WL 5543955, at *2; *Falbe*, 2004 WL 1588243, at *3; *Schmidt*, 2017 WL 2289035, at *2; *Chamberlain*, 2017 WL 3084270, *1. Accordingly, Plaintiff entered into a valid contract and is bound to arbitrate his claims against Samsung.

**B.**     **The Arbitration Agreement Assigns Questions of Scope to the Arbitrator, But in Any Event the Claims Asserted Fall Within the Agreement's Scope**

The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Here, the parties clearly and unmistakably agreed to arbitrate questions of arbitrability, including the Arbitration Agreement's scope. *First*, the Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this arbitration provision and the Limited Warranty." Ex. 1, p. 22. Courts interpret materially identical provisions to direct questions of arbitrability, including scope, to arbitration. *E.g., Air Line Pilots Ass'n, Intern. v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002). *Second*, the Agreement expressly incorporates the rules of the AAA, which provide that the arbitrator decides objections relating to the "existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," AAA Commercial Arbitration Rule R-7(a). *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014) ("[B]y incorporating the AAA Rules ... into the arbitration provision, [the parties] clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate Plaintiff's disputes.").

In any event, it is academic whether the arbitrator or Court decides arbitrability on these facts. The Arbitration Agreement covers disputes arising "IN ANY WAY" from the "SALE, CONDITION OR PERFORMANCE" of Plaintiff's Note7. Ex. 1, p. 21. Plaintiff alleges that the condition and performance of his Note7 did not meet his expectations. He specifically criticizes the "utility," "defective condition," and "life-threatening defect" of the phone. *See* FAC [Dkt. #73], Count II ¶ 5(e), Count I ¶ 5(a)-5(b), Count III ¶ 8. He further alleges that the "sale and failure to timely recall" the phone constituted a statutory violation. *Id.*, Count III ¶ 3.

A broadly-worded arbitration agreement such as the one here enjoys a presumption that claims fall within its scope. *See AT&T Techs v. Comm'cns Workers of Am..*, 475 U.S. 643, 650 (1986) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") (internal citations omitted); *McNamara*, 2014 WL 5543955 (claims for breach of implied warranty and claims under Illinois Consumer Fraud and Deceptive Business Practices Act fell within the scope of Samsung arbitration agreement). Under the FAA, it makes no difference that Plaintiff's complaint includes personal injury claims, as opposed to purely contractual claims. *See Marmet Health Care Ctr. Inc. v. Brown*, 565 U.S. 530, 532-533 (2012) ("[t]he [FAA's] text includes no exception for personal-injury or wrongful-death claims."). Plaintiff's claims thus unequivocally fall within the scope of the Arbitration Agreement.

**C.     SEC is Entitled to Invoke the Arbitration Agreement as SEA's "Affiliate"**

On its face, the Arbitration Agreement extends "to claims against [SEA's] employees, representatives ***and affiliates*** if any such claim arises from the Product's sale, condition or performance." Ex. 1, p. 22 (emphasis added). "If the contract language is clear, the court should give it legal effect and enforce it." *Chillmark Partners, LLC v. MTS, Inc.*, 2003 WL 1964408, *3

(N.D. Ill. Apr. 25, 2003). The term "affiliate" has a well-understood meaning in the law, which plainly encompasses SEA's parent company, SEC. *Id.*; *see Schmidt*, 2017 WL 2289035, *7 (stating that it "need not go beyond the terms of the agreement. The agreement applies to SEA's 'affiliates.' [] *SEA's parent companies plainly fall within the realm of SEA's affiliates*. Thus, SEC ... can enforce SEA's arbitration agreement….") (emphasis added).[5]  Accordingly, SEC is entitled to invoke the Arbitration Agreement with respect to Plaintiff's claims.

### D.  Plaintiff is Bound to the Arbitration Agreement Under the Estoppel, Agency, and Third-Party Beneficiary Doctrines

Plaintiff seeks to portray his connection to the subject Note7 as remote, alleging that his "employer" purchased the phone for him, essentially as an employee benefit.[6] Plaintiff contends that because he, personally, did not buy the phone, never paid consideration for it, and did not review the Arbitration Agreement, he is not bound by contract to arbitrate. Plaintiff is wrong. As a matter of law, Plaintiff is bound to the Arbitration Agreement even if he did not purchase the Note7. The Seventh Circuit enforces contracts, including arbitration agreements such as this one, against parties other than those who directly entered into the agreement under any of five doctrines: "(1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citations omitted). In addition, the Seventh Circuit recognizes that non-parties can be bound to arbitration agreements as third-party beneficiaries. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727,

---

[5]  Moreover, because Plaintiff's claims against SEA and SEC are based on the same facts and inherently inseparable and indistinguishable, Plaintiff should arbitrate his claims against all defendants, not just one. *See Pennsylvania Chiropractic Assn. v. Blue Cross Blue Shield Assn.*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) ("Because plaintiffs argue that their claims against non-signatory defendants are indistinguishable from their claims against signatory defendants, they are estopped from arguing the claims are separate for purposes of avoiding arbitration.").

[6]  To this end, Plaintiff's First Amended Complaint conspicuously replaces references to "the Taylor Family" with "Michael Taylor's employer." For example, the initial Complaint alleged "the *Taylor family* purchased [the Galaxy Note7] for use by Michael Taylor," whereas the First Amended Complaint alleges, "Michael Taylor's *employer* purchased [the Galaxy Note7] for use by Michael Taylor, an *employee*." *Compare* First Amended Complaint [Dkt. #73], ¶ 8, to Initial Complaint [Dkt. #1], ¶ 9 (emphasis added).

734 (7th Cir. 2005). Here, the related estoppel, agency, and third-party beneficiary doctrines each independently apply and dictate the same outcome, regardless of whether Plaintiff or his father/employer bought the phone that was specifically intended for Plaintiff's use.

### 1. Plaintiff Should be Estopped from Avoiding Arbitration Because He Used the Note7 and Received a Direct Benefit from the Contract

"A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich Am. Ins. Co.,* 417 F.3d at 688 (citations omitted). To be bound under this theory, the non-party must receive a "direct benefit" from the contract containing the arbitration provision. *Id.*; *Life Tech. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011) (benefits are direct "when arising specifically from the unsigned contract containing the arbitration clause" or "when specifically contemplated by the relevant parties") (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 351–53 (2d Cir. 1999)). "The very point of equitable estoppel as it relates to arbitration provisions is to avoid non-signatories directly benefitting from a contract containing an arbitration clause while at the same time seeking to avoid the arbitration clause contained in that selfsame contract." *Gersten*, 442 F. Supp. 2d at 584-85 (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)).[7]

Here, Plaintiff's own pleading establishes that he knowingly sought and received a "direct benefit" from the Note7 contract containing the Arbitration Agreement, since he used the Note7 as its intended user. The First Amended Complaint asserts that "Michael Taylor's employer purchased a Galaxy Note 7 phone for use by Michael Taylor, an employee." FAC [Dkt. #73], ¶ 8. It also alleges that Plaintiff "was provided the [Note7] … as an employee

---

[7] The same analysis applies under Texas law. *See Glassell Producing Co., Inc. v. Jared Resources, Ltd.*, 422 S.W.3d 68 (Tex. App. Texarkana 2014) (Under "direct benefits estoppel," a non-signatory is estopped from seeking benefits from the contract while attempting to avoid the contract's obligation to arbitrate disputes.).

benefit" (*Id.*, ¶ 27), and that he was "at all times a foreseeable user or consumer" (*Id.*, Count II, ¶ 6). As the First Amended Complaint amply demonstrates, Plaintiff's claims against Defendants arise out of his use of the Note7, which constitutes the receipt of a "direct benefit" from the governing contractual terms and conditions empowering such use.[8] Plaintiff also received a benefit from the Note7 contract in the guise of the limited warranty for the product, which is not rendered irrelevant merely because it is not at issue in this case.[9]

The doctrine of equitable estoppel thus dictates that Plaintiff should not be permitted to claim he is an average "foreseeable user or consumer" of the Note7 while simultaneously arguing the contract accompanying the Note7 does not apply to him. *See Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg.*, 659 F.2d 836, 838-39 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage.") (citing *Avila Group, Inc. v. Norma J. of California*, 426 F. Supp. 537, 540 (S.D.N.Y. 1977) ("To allow [a party] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."); *see Southern Illinois Beverage, Inc. v. Hansen Beverage Co.*, 2007 WL 3046273, *13 (S.D. Ill. Oct. 15, 2007). Here, similarly, Plaintiff cannot have it both ways: he cannot claim a benefit under the Note7 contract when it works to his advantage—i.e., use of the phone—while simultaneously repudiating it when it works to his

---

[8] The initial Complaint was even more explicit in establishing Plaintiff knowingly sought the benefit of the Note7. First, it admits that Plaintiff did in fact use the phone "as intended." Initial Compl. [Dkt. #1], ¶¶ 9-10. Second, it admits Plaintiff was aware of the instructions for using the Note7, stating that Plaintiff "charged the [Note7] when needed with the Samsung charger *as instructed by the manufacturer.*" *Id.*, ¶ 11 (emphasis added). Third, the initial Complaint included a count for Breach of Implied Warranty, which is by definition grounded in the warranties of the governing contract. *Id.*, Count III. It is telling that Plaintiff's amended pleading deletes each of these admissions, clearly in an effort to avoid the arbitration clause. Regardless of Plaintiff's selective editing, the First Amended Complaint suffices on its own to demonstrate that Plaintiff knowingly received the benefit of the Note7.

[9] Similarly, the contract granted Plaintiff the right to affirmatively invoke the Arbitration Agreement, potentially a more cost-effective outcome than court depending on the nature of his claim. For example, if the claim is for $5,000 or less, Plaintiff would only pay $50 in arbitration fees. *See* Ex. 1, p. 22.

disadvantage. To hold otherwise would be fundamentally unfair and contrary to the FAA. Under any reasonable interpretation of the phrase, Plaintiff received a "direct benefit" from the contract containing the Arbitration Agreement, and should be estopped from denying the Arbitration Agreement's application.

### 2. The Arbitration Agreement Covers Plaintiff as an Agent of His Family/Employer

Even if this Court were to determine that equitable estoppel does not apply, Plaintiff is bound by the Arbitration Agreement as his family/employer's agent. "An agreement containing an arbitration clause covers non-signatories under common law contract and agency principles." *Messing v. Rosenkrantz & EMSA*, 872 F. Supp. 539, 540 (N.D. Ill. 1995). *See Testa v. Emeritus Corp.*, 168 F. Supp. 3d 1103, 1108–1109 (N.D. Ill. 2016) ("The party alleging an agency relationship must prove it by a preponderance of the evidence.") (citing *Granite Properties Ltd. P'ship v. Granite Inv. Co.*, 220 Ill. App. 3d 711, 163 Ill. Dec. 139, 581 N.E.2d 90, 92 (1991)). The Seventh Circuit has addressed the question of whether agents—such as employees—can be covered under "an arbitration agreement between their principal and a third party." *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743–44 (7th Cir. 2010). The court stated, "[w]e have answered that question in the affirmative for employees acting within the scope of their agency … and there does not seem to be any reason to change the rule for non-employee agents." *Id.; see also Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121 (D. Colo. 2016) (though insureds who purchased shingles never viewed arbitration agreement conspicuously found on each bundle of shingles, insureds' agent, an independent contractor, did have such an opportunity, and his actual or constructive notice of the terms was imputable to the insureds as principals, as was his acceptance of the agreement by opening the bundles).

As noted above, Plaintiff now alleges that his "employer" purchased the subject Note7 for his use. FAC [Dkt. #73], ¶ 8. Irrespective of whether Plaintiff used the Note7 as an employee, or for personal/family purposes, he did so within the scope of his agency, as he concedes he used the phone "as intended." Plaintiff has <u>not</u> disputed that the Arbitration Agreement applies to an owner/purchaser of the Note7, which is Plaintiff's family/employer. As the agent for his family/employer, acting within the scope of his agency, Plaintiff is bound to the Agreement to the same extent as if he had personally signed the Agreement. Accordingly, the agency doctrine provides separate and equally persuasive grounds for binding Plaintiff to the Arbitration Agreement.

### 3. Plaintiff is Bound to the Arbitration Agreement as an Intended Third-Party Beneficiary

Based on the same facts, Plaintiff was the intended third-party beneficiary of the Note7 agreement between his family/employer and Defendants. Courts have recognized that in such circumstances, intended third-party beneficiaries can be bound to the relevant arbitration agreement. As the Seventh Circuit has articulated, the principle that "[o]nly signatories to an arbitration agreement can file a motion to compel arbitration … is subject to certain 'contract-based theories under which a nonsignatory may be bound to the arbitration agreements of others,' including the third-party beneficiary doctrine." *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (quoting *Ervin v. Nokia, Inc.,* 349 Ill.App.3d 508, 285 Ill. Dec. 714, 812 N.E.2d 534, 539 (2004)); *see also Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 876 (7th Cir. 2002) ("third-party beneficiary may enforce an arbitration agreement and may have arbitration agreement enforced against it") (applying Pennsylvania law).

As discussed above, Plaintiff's own allegations readily establish that he was the intended recipient of the Note7 purchased by his family/employer, and that Plaintiff did in fact use the

16

phone for its intended purpose. It is beyond dispute that Plaintiff was a third-party beneficiary of the contract containing the Arbitration Agreement. As a result, Plaintiff cannot avoid arbitration. *See Indus. Elecs. Corp. of Wis. v. iPower Distribution Group*, 215 F.3d 677, 680 (7th Cir. 2000) ("As a third-party beneficiary [of the contract containing the arbitration agreement], Industrial Electronics also would be bound by the arbitration provision.") (citations omitted).

**E.** **Whether the Arbitration Agreement is Unconscionable is a Question for the Arbitrator, But in Any Event the Agreement Is Neither Procedurally Nor Substantively Unconscionable**

As noted above, the Arbitration Agreement expressly delegates questions of arbitrability to the arbitrator, not the court. Ex. 1, p. 22. This delegation covers the applicability of an unconscionability defense. *See Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 894 (N.D. Ill. 2016) ("this Court cannot address the plaintiffs' argument that the Arbitration Provision is unconscionable; that is an issue for an arbitrator"); <u>Rent-A-Ctr.</u>, 561 U.S. at 72.

Yet even if this issue were for this Court to decide, the Arbitration Agreement is extremely fair and consumer-friendly, and is not unconscionable. Under Texas law, which expressly applies to the Arbitration Agreement (Ex. 1, p. 21), the provision is presumptively valid and enforceable unless grounds exist at law or in equity for revocation. *Johnson v. AT&T Mobility, LLC*, 2010 WL 5342825, at *4 (S.D. Tex. Dec. 21, 2010). Plaintiff, as the party opposing arbitration, bears the burden of proving why the agreement should not be enforced, such as by demonstrating unconscionability or fraud. *Id.* Here, Plaintiff cannot meet his burden of establishing either procedural or substantive unconscionability.

**1.** **The Arbitration Agreement Is Not Procedurally Unconscionable**

Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration provision." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir.

2004) (citation omitted). Under the "stringent standard" applied by Texas courts, "some form of oppression and unfairness must taint the negotiation process leading to the agreement's formation." *Johnson*, 2010 WL 5342825, at *4 (citations omitted); *see also Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement.").

Relative to this issue, Plaintiff has claimed the Arbitration Agreement is buried in the Warranty Guide and difficult to find, read and understand. Under Texas law, these factors, on their own, are not grounds for finding the Arbitration Agreement procedurally unconscionable, as the requisite "oppression and unfairness … taint[ing] the negotiation process leading to the agreement's formation" is not present. *See Johnson*, 2010 WL 5342825 at *4. The Arbitration Agreement discloses, in bold type, a simple and straightforward opt-out procedure with no penalties for opting out. *See, e.g., McNamara*, 2014 WL 5543955 at *2 (enforcing Samsung arbitration provision where "[t]here are no penalties associated with opting out and opting out does not affect the warranty coverage"). Indeed, the opt-out clause expressly notes that "[o]pting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty." Ex. 1, p. 23. Despite the ease with which Plaintiff might have opted out, he does not allege, and there is no record, that he did. Rowden Decl., ¶ 9.

Further, contrary to Plaintiff's view, the fact that Plaintiff was not the purchaser of the Note7, and did not read the contract documents, does not amount to procedural unconscionability. This argument misses the point of the doctrine. Plaintiff did not purchase the Note7 because his family/employer purchased it for him. This is not a case where the *purchaser*

18

was not afforded an opportunity to view the agreement prior to purchase. *Contrast with Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 101-102, 854 N.E.2d 607 (2006); *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 995 (N.D. Ill. 2008)). It is contradictory for Plaintiff to claim the Arbitration Agreement is procedurally unconscionable because he did not have an opportunity to view the Agreement until after the purchase, given that Plaintiff knowingly sought and received a direct benefit from the phone, and used it as the intended recipient. There is no basis for finding procedural unconscionability.

### 2. The Arbitration Agreement Is Not Substantively Unconscionable

Substantive unconscionability "refers to the fairness of the arbitration provision itself." *Carter*, 362 F.3d at 301 (citation omitted). The terms of the Arbitration Agreement at issue here are not unfair and, fittingly, courts have held that a virtually identical Samsung arbitration provision is not substantively unconscionable. *See McNamara*, 2014 WL 5543955 at *2 (enforcing Samsung arbitration provision included in warranty guide for Galaxy S4, and noting it "provides limitation on fees and allows the arbitrator to assess attorneys' fees on small claims").

Moreover, the Arbitration Agreement is not substantively unconscionable because it contains several safeguards for consumers bringing claims in arbitration. For example, for claims in which the total damage is $5,000 or less, the consumer is only required to pay a maximum of $50 in arbitrator fees, with Samsung responsible for paying the remainder. Ex. 1, p. 22. In addition, for such "small claims," the arbitrator may award reasonable fees and costs as part of any award to the consumer, but not to Samsung (absent a finding of bad faith). *Id.*

The existence of such safeguards precludes a finding of substantive unconscionability. In *Halliburton*, the Texas Supreme Court held that the plaintiff (the defendant company's employee) had failed to establish that the arbitration agreement at issue was unconscionable. 80

S.W.3d at 572. In so holding, the court observed that the agreement had several terms that protected the plaintiff, including that the company agreed to pay all but $50 of the arbitrator fees, and the employee could be awarded reasonably attorney fees upon a favorable result. *Id.* Just like the arbitration provision in *Halliburton*, the Arbitration Agreement here contains sufficient consumer protections to preclude a finding of substantive unconscionability.[10]

**F.     The Court Should Stay This Action and Order Plaintiff To Bring His Claims, If Anywhere, In Binding Arbitration**

The FAA requires that, upon determining which issues are referable to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Because Plaintiff entered into a valid, binding, and enforceable agreement to arbitrate all claims in his First Amended Complaint, Defendants' Motion to Compel Arbitration should be decided before the case proceeds any further. Any other outcome would contravene the FAA and the express agreement of the parties to efficiently resolve Plaintiff's claims, if anywhere, in individual, binding arbitration. *Hill v. Asset Acceptance, LLC*, No. 13-CV-1718, 2014 WL 1289578, at *2 (S.D. Cal. Mar. 27, 2014); *Stiener v. Apple Computer, Inc.*, No. C-07-4486, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007). Defendants respectfully request that the Court stay all further obligations pending resolution of this motion.

**V.     CONCLUSION**

For the reasons stated above, the Court should order Plaintiff to submit his claims to binding arbitration and stay all proceedings pending the outcome of any such arbitration.

---

[10] Plaintiff has also contended it is unfair and thus substantively unconscionable for Samsung to sell phones that it allegedly knew were dangerous. This theory has nothing to do with the validity or enforceability of the Arbitration Agreement and, in any event, should be reserved for the arbitrator.

2397498v.1

SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.


/s/ David M. Holmes
David M. Holmes
Erik J. Tomberg
Alexander Reich
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550
david.holmes@wilsonelser.com
erik.tomberg@wilsonelser.com
DATED: October 6, 2017          alexander.reich@wilsonelser.com


## CERTIFICATE OF SERVICE

I hereby certify that, on October 6, 2017, I filed electronically the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ David M. Holmes

21