No. 3:16-cv-50313
_____

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**
_____

**MICHAEL TAYLOR**

*Plaintiff*


v.


**SAMSUNG ELECTRONICS AMERICA, INC., a New Jersey Corporation, and**
**SAMSUNG ELECTRONICS CO., LTD., a Foreign Limited Liability Company,**

*Defendants*
_____

**BRIEF OF THE PLAINTIFF**
_____

Devon C. Bruce
70 W. Madison St., Suite 5500
Chicago, Illinois 60602
(t) 312.236.9381
(f) 312.236.0920

Jan Ohlander
RENO & ZAHM, LLP
2902 McFarland Road, Suite 400
Rockford, Illinois 61107
Phone: (815) 987-4050

**Table of Contents**

TABLE OF AUTHORITIES ...................................................................................2

INTRODUCTION................................................................................................3

UNDISPUTED STATEMENT OF FACTS ............................................................5

LEGAL STANDARD ...........................................................................................6

ARGUMENT .......................................................................................................6

    The arbitration clause is unenforceable because a contract was never formed...........................8

    In order for an arbitrator to decide whether or not there was an agreement to arbitrate, there needs to be a valid contract.. ...............................................................................12

    Assuming, *arguendo*, a contract was formed, it is unconscionable because the arbitration clause is inconspicuously embedded in the owner's Health and Safety Warranty guide... .......13

    Defendants' arguments regarding estoppel, agency, and third-party beneficiary are misplaced and misleading.........................................................................................14

    Samsung Korea was intentionally not identified in the Arbitration Agreement, and as such, cannot avail itself of the Arbitration Agreement....................................................19

CONCLUSION ...................................................................................................20

1

**Table of Authorities**

**Cases**

*American Family Insurance Co. v. Tamco Building Products*, 178 F. Supp. 3d 1121 (Dist. Colorado 2016) ............................................................................................................... 18

*AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ......................................................... 13

*AT&T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643 (1986) .................. 4, 8

*Bridas S.A.P.I.C v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) .................................. 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126 (9th Cir. 2000).............................. 6

*Davis v. Fenton*, 26 F. Supp. 3d 727 (N.D. Ill. 2014)................................................................... 13

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, U.S., 9 F.3d 1060 (2d Cir.1993) ................. 15

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)..................................................... 8

*Fleetwood Enters., Inc. v. Gaskamp*, 280 F. 3d 1069 (5th Cir. 2002) ........................................... 6

*Hellenic Investment Fund, Inc. v. Det Norkse Vertias*, 464 F. 3d 514 (5th Cir. 2006)............... 15

*Hill v. Gateway*, 105 F. 3d 1147 (7th Cir. 1997) ................................................................... 10, 11

*Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010)............................................ 18, 19

*Kilgore v. KeyBank, National Association*, 718 F.3d 1052 (9th Cir. 2013) .................................. 6

*Kinkel v. Cingular Wireless LLC.*, 223 Ill. 2d 1 (2006) ............................................................... 13

*McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498 (1st Dist. 1980) ................................. 8

*Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F. 3d 469 (5th Cir. 2010)................. 15, 16

*Norcia v. Samsung Telecommunications America¸LLC*, 845 F. 3d 1279 (9th Cir. 2017).... 6, 9, 10

*Quinn v. McGraw-Hill Companies, Inc.*, 168 F. 3d 331 (7th Cir. 1999)...................................... 17

*Razor v. Hyundai Motor America*, 222 Ill. 2d 75 (2006)............................................................. 13

*Rent-A-Ctr., W., Inc. v. Jackson. Rent-A-Ctr.*, 561 U.S. 63 (2010) ............................................ 12

*Schafer v. UnionBank/Central*, 2012 IL App (3d) 110008........................................................ 8, 9

*Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977)........................................................ 8

*Stone v. Doerge*, 328 F.3d 343 (7th Cir. 2003).......................................................................... 17

*Volt. Info. Scis., Inc. v. Board Of Trustees Of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989).... 6

*Wallace v. Chicago Housing Authority*, 298 F. Supp. 2d 710 (N.D. Ill. 2003) ........................... 17

*Zurich American Ins. Co. v. Watts Indust., Inc.*, 417 F. 3d 682 (7th Cir. 2005)......................... 15

**Statutes**

9 U.S.C. § 2 .................................................................................................................................. 13

**Other Authorities**

*Black's Law Dictionary 4th Edition* ............................................................................................... 8

USA Today "Samsung Galaxy Note 7 Recall By The Numbers," October 12, 2016 written by Jefferson Graham............................................................................................................... 14

**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY ALL PROCEEDINGS**

Now comes the Plaintiff, MICHAEL TAYLOR, (hereinafter "Michael"), by and through his attorneys, POWER, ROGERS & SMITH, LLP and RENO & ZAHM, LLP, responding to the Motion to Stay Litigation and Compel Arbitration of Defendants, SAMSUNG ELECTRONICS AMERICA, INC. (hereinafter "Samsung America") and SAMSUNG ELECTRONICS CO., LTD. (hereinafter "Samsung Korea") , states the following:

**Introduction**

On August 16, 2016, Michael received a Samsung Galaxy Note 7 from his employer for him to use as an employee of Taylorbuilt Farms, Inc. On the night of September 12, 2016, Michael plugged the Samsung Note 7 into the Samsung charger before going to bed. In the early morning of September 13, 2016, Michael awoke with the Samsung Note 7 engulfed in flames which resulted in severe burns to his body caused by the phone.

On October 3, 2016, Plaintiff filed a complaint at law against two separate corporations, Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. Defendant Samsung America originally filed its Motion to Transfer in November 2016, and argued Michael is bound by the arbitration clause deeply embedded in the owner's Health & Safety Warranty Guide that was included in the phone's box at the time of purchase. That arbitration clause gave the purchaser 30 calendar days from the date of purchase to opt-out of the provision either by email or calling. According to Samsung America, failure to opt-out before 30 calendar days bound the purchaser to arbitration. What Samsung America wrongfully assumed at the time it originally filed its motion is that Michael purchased the phone. Michael <u>did not</u> purchase the phone; <u>never saw any</u>

3

documents which accompanied the phone; never saw the box the phone came in; never took the phone out of its box; never saw or inspected the materials that came with the phone; and he never knew the owner's Health and Safety Warranty guide even existed. When confronted with the actual facts at the initial status hearing, Samsung America's counsel was surprisingly unaware of these crucial facts. (Report of Proceedings dated December 1, 2016, pg. 4). Defendants' position has evolved since the initial filing of its motion.

Arbitration clauses accompanying a product's purchase are held to basic contract requirements, with their enforceability depending on the traditional elements of offer, acceptance, and consideration. (*See AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 468 (1986)) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Here, it is absolutely clear there was no offer, acceptance, or consideration. (Exhibit A, Affidavit of Michael Taylor). Therefore, there was no mutual assent or meeting of the minds between Michael and either of the Samsung entities. Thus, there was never a contract formed between Michael and the Defendants, rendering the arbitration clause inapplicable. Assuming, *arguendo*, this Court were to find a binding contract existed between Michael and Samsung, the arbitration provision contained in the owner's Health and Safety Warranty guide is inconspicuously embedded in a maze of text, and thus unconscionable. Just as important to the unconscionable nature of the clause is the fact Samsung is attempting to extract the arbitration clause from the owner's documents and apply it to phone users it never reasonably expected to know such a clause ever existed. Furthermore, Michael was not a third-party beneficiary, cannot be estopped under the direct-benefits theory, and is not a proper agent for purposes of the arbitration clause. Lastly, an entire separate reason exists to deny the motion

4

as to Defendant Samsung Korea, as Samsung Korea was never identified in the documents Samsung Korea now seeks to rely upon. Accordingly, this Court should deny Defendants' motion.

## Undisputed Statement of Facts

Michael received the Samsung Note 7 simply to use as an employee tool for his safety on August 16, 2016 from his employer, Taylorbuilt Farms, Inc. (Exhibit B, See First Amended Complaint, #27; Exhibit C, Affidavit of Susan Taylor). On September 12, 2016, prior to going to bed, Michael plugged in the Note 7 to charge overnight and went to sleep. (Exhibit B, #10). In the early morning of September 13, 2016, Michael awoke with his Note 7 engulfed in flames, burning his mattress and multiple areas of Michael's body. (Exhibit B, #12). He was rushed to the hospital where he was diagnosed with 1st, 2nd, and possibly 3rd degree burns to his lower extremities. (Exhibit B, #13).

Michael <u>did not</u> purchase or own the Note 7. (Exhibit B, # 20-21). The owner of the phone was Taylorbuilt Farms, Inc. (Exhibit C, Affidavit of Susan Taylor). He <u>did not</u> receive the box containing the phone and never received any written materials that accompanied the phone (Exhibit B, #22; Exhibit C, Affidavit of Susan Taylor). He <u>did not</u> pay *any* phone bills nor was he provided with *any* arbitration clause by Samsung or anyone else. (Exhibit B, #24-25; Exhibit C, Affidavit of Susan Taylor). Michael used the Samsung Note 7 as it was intended to be used and charged the phone when it needed to be charged. (Exhibit B, #9). Michael simply received this phone, by itself, as an employee benefit. (Exhibit B, #27; Exhibit C, Affidavit of Susan Taylor). Neither Defendant contest any of these facts.

**Legal Standard**

While the Federal Arbitration Act "embodies the national policy favoring arbitration," the "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telecom. America*, 845 F. 3d 1279, 1291 (9th Cir. 2017). This "liberal federal policy," however, "does not require parties to arbitrate when they have not agreed to do so." *Volt. Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). Therefore, the essential question for this Court is whether or not "a valid agreement to arbitrate exists . . ." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F. 3d 1052, 1058 (9th Cir. 2013). "The federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead 'ordinary contract principles determine who is bound.'" *Fleetwood Enters.*, *Inc. v. Gaskamp*, 280 F. 3d 1069, 1073 (5th Cir. 2002).

**Argument**

Following basic principles of contract law, there was never a contract formed between Michael and either of the Samsung entities. Therefore, the arbitration clause upon which the Defendants solely rely is unenforceable. Assuming *arguendo*, that this Court should find that a contract was formed, the arbitration clause still should not be enforced because it is unconscionable due to the inconspicuous placement in the owner's Health and Safety Warranty guide and the fact Michael could never be expected to read the actual owner's paperwork. Defendants argue Michael was a third-party beneficiary, enjoyed direct-benefits from the contract, and was an agent of the phone's buyer and therefore must be forced to arbitrate his claim. These alternative arguments are

6

misplaced and misleading.

Defendants believe their attempt to compel Plaintiff to arbitration is based upon "hornbook" law, yet Defendants ignore the principles of basic contract law. Simply stated, Samsung America and Samsung Korea take the position that <u>any</u> person using <u>another person's</u> Samsung phone, which explodes while *any* person is using the phone, is deemed to have waived their 7th Amendment right to trial by jury. The sole basis for Samsung's incredible (and evolving) position is the argument that the phone's <u>actual</u> purchaser and owner received a batch of documents at the time the actual owner purchased the phone. According to the Samsung defendants, any remote user of its exploding phone is barred from the Courthouse based upon the sole fact that when the purchaser of the phone took possession of the phone, there was buried in the <u>owner's</u> documents an arbitration clause.

Now, in light of the fact that Defendants understand that Michael was not the owner and never received the documents containing the arbitration clause, Defendants' position has evolved to the point that Defendants now argue any permissive user of another's Samsung phone has the arbitration clause deposited upon them from the cloud the instant the phone explodes. When a non-owner is injured, it is the injury that triggers contractual arbitration – unless the clairvoyant non-owner had opted out of the arbitration clause within 30 days of the actual owner/purchaser buying the phone. The opt-out provision clearly relates to the purchaser, ie- "You" as stated in the owner's Health and Safety Warranty Guide. (Exhibit D, Health and Safety Warranty Guide, p. 23)(Marked as Exhibit 1 in Defendant's Motion to Stay Litigation and Compel Arbitration)   The arbitration clause likewise only relates to purchasers.

This incredible position is being offered to this Court as "hornbook" contract law, now that Defendants have switched gears to claim that a bar to the Courthouse applies not only to the person purchasing the phone, but to any person using the phone – no matter how remote.

Instead of addressing head-on the issue whether any court, in any jurisdiction, has enforced an arbitration clause against a permissive user of another purchaser's phone, Defendants simply characterize the employer's phone as "Plaintiff's phone." (See Defendants' Motion, p. 1). It is undisputed that the phone which exploded and caused Plaintiff's injuries was not Plaintiff's phone. Despite being granted leave to file a brief of 21 pages, Defendants cite only cases where actual "parties" to an arbitration agreement will be bound to an enforceable arbitration clause. Plaintiff's uncontested declaration, as well as that of his mother, establishes that no offer, acceptance or consideration was exchanged between the employee/permissive user, and either Samsung entity. Lastly, even assuming that the Defendants are successful in overcoming all of the previous arguments, Samsung Korea cannot rely upon the arbitration clause because it was intentionally not identified in the Samsung America documents provided to Plaintiff's employer.

For these reasons and the reasons that follow, Defendants' motion should be denied.

**A. The arbitration clause is unenforceable because a contract was never formed.**

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *AT&T Techs., Inc.*, 475 U.S. at 468 (1986). In analyzing whether an arbitration clause is valid, the Court must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Pursuant to Illinois Supreme Court case law, "an offer, an acceptance, and consideration are basic ingredients of a contract." *Steinberg v. Chicago Medical School*, 69 Ill. 2d

320, 329 (1977). An offer is an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract. *McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498, 507 (1st Dist. 1980) citing *Black's Law Dictionary 4th Edition*. Further, "where the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer." *Id*. at 508. Moreover, "mutual assent, also referred to as a meeting of the minds or mutuality" is an essential element to the formation of a contract in Illinois. *Schafer v. UnionBank/Central*, 2012 IL App (3d) 110008, ¶ 38.

Here, there was <u>never</u> an offer by either of the Samsung entities to Michael. He was <u>never</u> given or even notified of the Health and Safety Warranty guide that allegedly accompanied the phone. Additionally, he was <u>never</u> notified of any arbitration clause by anyone. Assuming, *arguendo*, that Samsung *did* offer Michael the arbitration clause, he did not accept any offer that was given to him by the Samsung Defendants. Michael never bought the phone, did not own the phone, never saw the box it came in, never paid a phone bill, and never saw or inspected the Health and Safety Warranty guide that included the arbitration provision. (Ex. A, Affidavit of Michael Taylor; Ex. C, Affidavit of Susan Taylor.) There was 'no mutual assent" or a "meeting of the minds" to Samsung's one-sided terms because Michael never knew the Health and Safety Warranty guide existed. Therefore, there is no contract, making the arbitration clause invalid and unenforceable to Michael.

A somewhat similar case was decided in the U.S. Court of Appeals for the Ninth Circuit last year, although it too involved an actual owner. In *Norcia v. Samsung Telecom. America, LLC*, plaintiff bought a Samsung Galaxy S4 from Verizon Wireless. 845 F. 3d 1279, 1282 (9th Cir. 2017). Plaintiff paid for the phone at the register, and a Verizon employee provided a receipt

entitled "Customer Agreement." *Id*. The receipt contained a provision, stating in all caps, "I understand I am agreeing to . . . settlement of disputes by arbitration and other means . . . and other important terms in the Customer Agreement." *Id*. Plaintiff signed the Customer agreement and Verizon sent him the receipt. *Id*. After signing the agreement, the <u>Verizon employee</u> took the Samsung phone out of its box, unpacked the materials contained in the box, and helped plaintiff transfer his contacts from his old phone to the newly purchased Samsung phone. *Id*. (emphasis added). Plaintiff then took the phone, the phone charger, and the accompanying headphones and left the store. *Id*. Plaintiff declined to take the box and materials contained therein. *Id*. Those materials contained an arbitration provision that the customer could opt-out of within 30 calendar days of the purchase of the phone. *Id*.

Plaintiff filed a class action complaint against Samsung, alleging that Samsung misrepresented his Galaxy S4's storage capacity and rigged the phone to operate at a higher speed when it was tested. *Id*. Samsung then moved to compel arbitration by invoking the arbitration provision in the Product and Safety Warranty Information contained in the box, saying despite the buyer not seeing it, he assented to it by signing the receipt. *Id*. at 1283. The district court denied Samsung's motion and the Ninth Circuit affirmed, saying "there is no dispute Norcia [plaintiff] did not expressly assent to any agreement in the brochure." *Id*. at 1285. Further, "Samsung's offer to arbitrate all disputes with Norcia 'cannot be turned into an agreement because the person to who it is made or sent makes no reply . . .'" *Id*.

Despite the Ninth Circuit applying California contract law, the logic and reasoning can be applied to the present case. Here, like the plaintiff in *Norcia*, it is undisputed that Michael never saw the Health and Safety Warranty guide that contained the arbitration provision. Like the

plaintiff in *Norcia*, Michael was never told about the arbitration provision. Michael never bought the phone, something the plaintiff did in *Norcia* but was still not bound by the arbitration clause because he did not see or know about the provision.

Defendants erroneously argue the Seventh Circuit's decision of *Hill v. Gateway* supports the enforcement of the arbitration provision against a non-owner. In *Hill*, plaintiff/<u>buyer</u> purchased a Gateway 2000 computer over the phone using his credit card. *Hill v. Gateway*, 105 F. 3d 1147, 1148 (7th Cir. 1997). When the box arrived at his home, it contained terms and conditions, part of which stated the computer must be returned in 30 days to avoid arbitration of any matter. *Id*. The plaintiff/<u>buyer</u> did not return the computer within 30 days and filed for a class action suit alleging fraud. *Id*. Gateway moved to compel arbitration, which the district court dismissed because there was "not a valid arbitration agreement between the parties." *Id*. On appeal, Judge Easterbrook, writing for the Seventh Circuit, reversed, saying it is practical for businesses to include these terms and conditions in boxes for their products. "If the staff at the other end of the phone for direct-sales operations such as Gateway's had to read the four-page statement of terms before taking the buyer's credit card number, the droning voice would anesthetize rather than enlighten many potential buyers." *Id*. at 1149. "Others would hang up in a rage over the waste of their time." *Id*.

There are significant factual differences between *Hill* and the case at bar. The plaintiff in *Hill* <u>was the purchaser of the product</u>. The plaintiff took the time to <u>personally call</u> Gateway over the telephone, give them his credit card information, and have the product delivered to his home. Plaintiff was the one who opened the box containing the computer. The plaintiff and his wife in *Hill* even conceded to "noticing the statement of terms but deny reading it closely enough to discover the agreement to arbitrate." *Id*. at 1148. In the case at bar, Michael <u>did not purchase</u> the

11

phone. Michael <u>did not</u> personally call, see, or have any contact with Samsung. Michael <u>did not</u> <u>open</u> the box containing the phone and the Health and Safety Warranty guide. Michael <u>did not</u> see, notice, or become aware of any Health and Safety Warranty guide or the terms inside of it, including the arbitration clause. Defendants believe they can misdirect this Court by focusing on the broad rule that terms and conditions accompanying a product are binding when the <u>buyer</u> opens the box and acknowledges the terms and conditions. However, under the circumstances of this case, even that broad application does not apply here.

**B. In order for an arbitrator to decide whether or not there was an agreement to arbitrate, there needs to be a valid contract.**

Defendants want to circumvent the uncomfortable reality that there was never a contract formed between Michael and Samsung by arguing that even for questions of whether the matter is ripe for arbitrability, the fact Michael was injured binds him to arbitration. Defendants point to the language contained in the owner's Health and Safety Warranty guide, saying "the arbitrator shall decide all issues of interpretation and application of this arbitration provision and the Limited Warranty." (Exhibit D, Health and Safety Warranty Guide, p. 22). Again, in order for that to hold true, <u>there needs to be a valid contract between the parties</u>. The Defendants misconstrue the U.S. Supreme Court decision in *Rent-A-Ctr., W., Inc. v. Jackson*. *Rent-A-Ctr.,* which involved a former employee bringing a § 1981 action against his former employer for alleged race discrimination and retaliation. *Rent-A-Ctr., W., Inc. v. Jackson. Rent-A-Ctr.*, 561 U.S. 63, 65-66 (2010). The main question presented to the court in *Rent-A-Ctr.* was whether "a district court may decide a claim that an arbitration agreement is unconscionable, <u>where the agreement explicitly assigns that</u> <u>decision to the arbitrator</u>." *Id.* (emphasis added). Justice Scalia, in writing for the majority, ultimately decided an arbitrator was to interpret this contract. But the reason why Justice Scalia

12

said an arbitrator in this case must decide questions of arbitrability is because <u>both parties (employee and employer) had a valid contract</u>. The employee/plaintiff signed a "Mutual Agreement to Arbitrate Claims . . . as a condition of his employment" prior to beginning his job. *Id*. Therefore, Justice Scalia was simply interpreting an <u>existing contract</u> between the two parties. Here, there is no contract between Michael and Samsung. If there is no contract, there is nothing for this Court or an arbitrator to interpret.

**C. Assuming, *arguendo*, a contract was formed, it is unconscionable because the arbitration clause is inconspicuously embedded in the owner's Health and Safety Warranty guide.**

Courts should uphold the general principles of the Federal Arbitration Act "unless they are invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Davis v. Fenton*, 26 F. Supp. 3d 727,735 (N.D. Ill. 2014) citing *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (quoting 9 U.S.C. § 2). These defenses are analyzed under state contract law. *Id*. Unconscionability can be either procedural or substantive. *Davis*, 26 F. Supp. 3d at 737. Illinois courts have found that procedural unconscionability can refer "to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel v. Cingular Wireless LLC.*, 223 Ill. 2d 1, 22 (2006) citing *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 98 (2006). "In determining whether a contract is procedurally unconscionable, the Court should consider 'all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and <u>whether important terms were hidden in a maze of fine print</u>.'" *Davis*, 26 F. Supp. 3d at 737 citing *Kinkel*, 223 Ill. 2d at 22. (Emphasis added).

13

Again, assuming there was a valid contract between Michael and Samsung, the arbitration provision is procedurally unconscionable because it was buried on the 21st page of the owner's Health and Safety Warranty guide (Exhibit D, Health and Safety Warranty Guide, p. 21) that Samsung knew would never reach the eyes of a remote user. Moreover, not until the 23rd page does the opt-out provision show up. (Exhibit D, Health and Safety Warranty Guide, p. 23). Again, Samsung knew a remote user would never lay eyes on these words. Not only is this text "hidden in a maze of fine print" but if it were so important to Samsung, they would have put it in the first few pages of the Health and Safety Warranty guide. Nothing in any of the owner's documents comes close to ever suggesting a non-owner is bound to any provisions provided to the purchaser. It should be noted that according to USA Today newspaper article on October 10, 2016 - days after the recall, it was stated that 2.5 million Samsung Galaxy Note 7 phones were sold. (Exhibit E, USA Today "Samsung Galaxy Note 7 Recall By The Numbers," October 12, 2016 written by Jefferson Graham). Defendants have disclosed in discovery that only 27 purchasers have opted out of the arbitration clause. (Exhibit F, Defendants' Discovery Response Regarding Number of Opt-Out Customers). This equates to a percentage of .000018 of the purchasers who chose to opt out. Further, what does waiver of a constitutional right have to do with "Health and Safety"? The reason for the provision being on the 22nd and 23rd pages is because Samsung does not want their customers or consumers noticing this clause, (as evidenced in the actual percentage of purchasers that opted out) hoping they inadvertently submit to arbitration. The deception is obvious, and this motion should be denied.

**D. Defendants' arguments regarding estoppel, agency, and third-party beneficiary are misplaced and misleading.**

Defendants' effort to invoke estoppel, agency, and third-party beneficiary arguments to

attack the obvious failures of its lack of privity also fail. First, Defendants claim that if Plaintiff never purchased the phone, saw the arbitration clause, or paid any consideration of any nature to Samsung (which is true), then Plaintiff can still be barred from the Courthouse because he knowingly sought the benefits of some clause he never saw because he used his employer's phone, invoking the direct-benefits estoppel theory. This argument apparently relates to a single provision in the purchaser's documents. The Defendants claim Plaintiff somehow relied on his employer's alleged contract with Samsung America simply because he used the phone, and it would be "unfair" if Plaintiff is severely injured by a defective phone and seeks his remedy in court. This is not the law.

Defendants cite the case of *Zurich American Insurance Co. v. Watts Indust., Inc.* to support its theory of direct-benefits estoppel, saying a party that "knowingly seeks the benefits of the contract containing the arbitration clause" is bound by that contract. 417 F. 3d 682, 688 (7th Cir. 2005). However, what Defendants fail to acknowledge, is that "to satisfy the knowledge requirement, the case law requires that <u>the non-signatory have had actual knowledge of the contract containing the arbitration clause</u>." *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F. 3d 469, 473 (5th Cir. 2010). (Emphasis added). *See Hellenic Investment Fund, Inc. v. Det Norkse Vertias*, 464 F. 3d 514, 515–16, 519 (5th Cir. 2006) (applying direct benefits estoppel to a non-signatory that knew of the contract to which it was later bound); *Bridas S.A.P.I.C v. Gov't of Turkm.*, 345 F.3d 347, 361–62 (5th Cir. 2003); see also *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, U.S., 9 F.3d 1060, 1064 (2d Cir.1993) (finding that a non-signatory was bound when it received a copy of the agreement containing an arbitration clause). Samsung thinks it is "fair" to bind Michael to a contract he never saw and an arbitration clause he had no reason to believe existed, and which

Samsung had no reason to believe would ever be seen by Michael.

In *Noble*, an oil-drilling company sought to purchase wire mooring rope from defendant Certex USA through its distributor Defendant Bridon International. *Noble*, 620 F. 3d at 471. Noble entered into a sales contract with Certex to purchase the ropes from Bridon. *Id*. Certex then entered into purchase order agreements with Bridon detailing the type of rope Noble wanted and fulfilled the order. *Id*. The aforesaid purchase order agreement between Certex and Bridon contained an arbitration provision. *Id*. However, "no evidence suggests that Noble was ever furnished a copy of the Distribution Agreement, the Purchase Order Agreements, or any 'terms and conditions' containing an arbitration clause prior to this litigation." *Id*. at 471-472.

After the ropes allegedly failed in a hurricane and caused damage to Noble's rigs, Noble brought suit alleging breach of contract. *Id*. at 472. Defendants moved to compel arbitration pursuant to the FAA and the arbitration provision contained in the purchase order agreements. *Id*. Noble argued "that it did not have any knowledge of the Purchase Order Agreements until after this litigation began." *Id*. at 473. Further, Certex or Bridon did not "point to any evidence that Noble had any knowledge of the Purchase Order Agreements at the time Noble purchased and received the ropes, and the district court did not find that Noble had such knowledge." *Id*. at 474. Despite this, the district court granted Defendants' motion. However, the Fifth Circuit reversed, saying "because no evidence supports a conclusion that Noble knew of the terms of the Purchase Order Agreements, Noble could not have the knowledge necessary to support the 'knowingly exploited' theory of direct benefits estoppel." *Id*.

Here, the facts are nearly identical to those before the Court in *Noble*. There is no evidence that Michael had any knowledge whatsoever that the Health and Safety Warranty guide

16

accompanying the Samsung Note 7 purchased by his employer even existed. Therefore, Michael had no knowledge of the arbitration clause. Because this direct knowledge is lacking, the direct-benefits estoppel theory cannot be applied to the present case. This is fair.

Regarding Defendants' third-party beneficiary argument, Illinois follows the "intent to benefit rule"; that is, third party beneficiary status is a matter of divining whether the contracting parties (Michael's employer and Samsung America) <u>intended to confer a benefit upon a nonparty</u> to their agreement. *Quinn v. McGraw-Hill Companies, Inc.*, 168 F. 3d 331, 334 (7th Cir. 1999). At the same time, Illinois law creates a strong presumption against creating rights in third party beneficiaries. *Id.*; *see also Wallace v. Chicago Housing Authority*, 298 F. Supp. 2d 710, 724 (N.D. Ill. 2003). To overcome this presumption, the intent to benefit a third party must affirmatively appear from the language of the contract and the circumstances surrounding the parties at the time of execution. *Wallace*, 198 F. Supp 2d at 724. No such language exists.

As a corollary rule, only intended beneficiaries have rights; an incidental beneficiary has no rights under a third-party beneficiary contract. *Id.* To that end, either the express language in the contract identifying the third-party beneficiary must reflect intent to benefit the party, or there otherwise must be such a strong implication the contract applies to third parties that it practically amounts to an express declaration. *Id.*; *see also Stone v. Doerge*, 328 F.3d 343, 346 (7th Cir. 2003). Given the strong presumption against a finding of third party beneficiary status, unless the agreement expressly identifies such third party beneficiaries, such status will not be found. *Stone*, 328 F.3 at 334 (even though a third party beneficiary clause existed in agreement between trusts and clearing broker which contained an arbitration provision, the Seventh Circuit held that because the arbitration agreement was between the trusts and a clearing broker, no

17

arbitration was required on the trust's fraud claim against the introducing broker; the agreement did not expressly state it was intended for the benefit of introducing broker). In sum, each party to the contract <u>needs to intend</u> for the third-party to benefit from said contract. Here, there is no evidence that Samsung knew Michael existed, let alone knew he was going to be using the owner's phone and benefitting from it. Nothing in the entirety of the documents provided to a purchaser suggest remote users would be considered a purchaser for purposes of arbitration (or anything else). For these reasons, Michael was not a third-party beneficiary for purposes of enforcing the arbitration clause against him.

Defendants' agency argument is similarly based upon a misapplication of the law and facts. Defendants cite *American Family Insurance Co. v. Tamco Building Products* for the proposition that a manufacturer may invoke an arbitration clause against an employee of a party to an arbitration clause – assuming *arguendo* that the arbitration clause is enforceable. 178 F. Supp. 3d 1121 (Dist. Colorado 2016). The case could not be more off point. In *American Family Ins.*, the actual purchasers were deemed parties to an arbitration agreement because they had actual or constructive notice of the terms in the <u>insured's</u> contract. The most cursory reading of the case distinguishes it from Michael's facts. Michael is not seeking to be covered by the arbitration clause, and Defendants have cited no case for the proposition that a non-party employee can be bound by an arbitration clause simply by using a tool, car, phone, or any other product.

Defendants also cite the Seventh Circuit case of *Janiga v. Questar Capital Corp*., 615 F.3d 735 (7th Cir. 2010). In *Janiga*, plaintiff invested in defendant Questar after signing a form. *Id*. One year later, plaintiff was unhappy with his returns and sued defendant and their representatives, alleging a violation of the Securities Exchange Act among other common law causes of action. *Id*.

18

at 737-738. The *Janiga* decision was primarily concerned with whether the court or an arbitrator is responsible for deciding whether a document the parties signed constituted a contract and if that contract included an arbitration clause. *Id*. at 737.

Defendants once again misconstrue this decision by suggesting that *Janiga* supports attaching an arbitration clause to an agent. *Janiga h*as material differences from the present case that must be highlighted. The defendant agents of Questar <u>sought to benefit from the arbitration provision</u> that Questar was seeking to enforce. *Id*. at 743. This is different from the present case where the alleged agent [Michael] is <u>not</u> seeking benefit from the supposed arbitration clause. Further, the *Janiga* court simply said that "we cannot be as confident at this point that the arbitration agreement between Janiga and Questar also sweeps in Hessek and Hessek Financial [agents of Questar]. *Id*. The court went on to say that "we remand this much of the case to the district court so that it can make the findings necessary to decide whether these contract terms apply to Hessek and Hessek Financial based on agency principles or otherwise." *Id*. Overall, this case does not illustrate that Michael is a proper agent of his employer for purposes of binding him to the arbitration clause.

**E. Samsung Korea was intentionally not identified in the Arbitration Agreement, and as such, cannot avail itself of the Arbitration Agreement.**

Defendants contend the arbitration clause extends to "claims against [SEA's] employees, representatives and affiliates if any such claim arises from the Product's sale, condition, or performance." However, because this arbitration clause is part of a contract that is unenforceable against non-parties, this provision cannot be applied. It is entirely invalid due to the lack of a binding contract. Samsung set these entities up as separate corporations. Samsung America then wrote the one-sided document as it intended and it intentionally chose not to include Samsung

Korea. Now, after a tragedy and lawsuit, Samsung should not be allowed to add Samsung Korea into the document. ***To be clear, Samsung Korea was never included anywhere in the Health and Safety Warranty guide or the arbitration clause contained therein*** (for obvious reasons attempting to limit warranty exposure). Only Samsung America was identified as "Samsung" for purposes of limiting liability (Exhibit D, Health and Safety Warranty Guide, pg. 21). For these reasons, Samsung Korea cannot invoke an arbitration provision that never included Samsung Korea in the identification of Samsung.

### Conclusion

Plaintiff Michael Taylor and Defendants Samsung America and Samsung Korea did not enter into a binding contract. Therefore, the arbitration clause contained in the Samsung America Health and Safety Warranty guide is invalid and unenforceable. Furthermore, assuming there was a contract formed, the arbitration clause is unconscionable due to it being inconspicuously buried 22 pages into the owner's guide amongst other fine print, never believing a remote user would see it. Samsung Korea was never identified as "Samsung" in any of the owner's documents. The cases Defendants cited are misplaced, misleading, and entirely distinguishable from the case at hand. For these reasons, this Court should deny Defendants' motion.

Dated: February 7, 2018

By: /s/Devon C. Bruce
One of Plaintiff's Attorneys

Devon C. Bruce
POWER, ROGERS & SMITH, LLP
70 West Madison, #5500
Chicago, IL 60602
Phone: (312) 236-9381
dbruce@prslaw.com

Jan H. Ohlander
RENO & ZAHM, LLP
2902 McFarland Road, Suite 400
Rockford, Illinois 61107
Phone: (815) 987-4050
jho@renozahm.com

***Attorneys for Plaintiff***

**Exhibit List:**

Exhibit A – Affidavit of Michael Taylor

Exhibit B – Plaintiff's First Amended Complaint

Exhibit C – Affidavit of Susan Taylor

Exhibit D – Samsung Health and Safety Warranty Guide

Exhibit E – USA Today News Article from October 10, 2016

Exhibit F – Samsungs' Discovery Response of Opt-Out by Purchasers