IN THE UNITED STATES DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS WESTERN DIVISION

| | |
|---|---|
| MICHAEL TAYLOR,<br><br>                Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., a New York Corporation and SAMSUNG ELECTRONICS CO., LTD, a Foreign Limited Liability Company,<br><br>                Defendants. | Case No. 3:16-CV-50313 |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF RENEWED
MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

Defendants SAMSUNG ELECTRONICS AMERICA, INC. ("SEA") and SAMSUNG ELECTRONICS CO., LTD. ("SEC") (collectively, "Defendants" or "Samsung"), by and through their attorneys, state as follows for their Reply Brief in Further Support of Renewed Motion to Compel Arbitration and Stay All Proceedings [Dkt. #79] ("Renewed Motion"):

**I.    INTRODUCTION**

Plaintiff's Opposition grossly mischaracterizes Samsung's Renewed Motion, claiming Samsung contends that "any" remote person who happens upon "another person's" phone would be bound to arbitration simply by making a call. Pl.'s Br. at 7. Samsung does nothing of the sort, and Plaintiff's straw man is as unavailing as it is inaccurate. Under Seventh Circuit precedent, Plaintiff is unambiguously bound to arbitrate his claims in accordance with the Arbitration Agreement that came with the Note7 smartphone that was purchased specifically for him, not the phone of some unidentified user not at issue in this case. Critically, Plaintiff's First Amended Complaint and Opposition both concede that ***Plaintiff was the intended user*** of the phone purchased by his father/employer − not some hypothetical "remote user" − and that Plaintiff

received the phone as an employee "benefit" or "tool," which he used "as it was intended to be used." *See* Pl. Br. at 5; FAC [Dkt. #73], Count II, ¶ 6. Moreover, in describing the Note7 as an employee "benefit" and "tool," Plaintiff acknowledges the Note7 had value to him and that, by extension, he directly and intentionally benefited from using it. In an attempt to avoid the enforceable terms and conditions that go hand-in-hand with using the device, Plaintiff now alleges that his family/employer acted as an intermediary in buying the phone specifically for him. However, Seventh Circuit and Illinois law do not permit him to avoid the Note7's terms and conditions, including the agreement to arbitrate claims arising from the use of the device.

Plaintiff's use of his Note7 is a textbook example of why courts have developed several legal doctrines to bind non-signatories to agreements from which they directly and intentionally benefit. The related agency, third-party beneficiary, and estoppel doctrines independently dictate that Plaintiff became contractually bound to the Note7 Arbitration Agreement, under its express terms, by receiving, accepting, and using the Note7. Notably, the Arbitration Agreement is directed to "users" as opposed to "purchasers" of the Note7; indeed, the title page of the Note7's Warranty Guide states that "[b]y using this device, you accept those terms and conditions" for the Note7. The very next page of the Warranty Guide is titled "Legal Information" and specifically calls out the Arbitration Agreement and 30-day opt-out period. Here, as in other cases where plaintiffs have attempted to deny the enforceability of arbitration agreements that came with products purchased *for* them by others, Plaintiff cannot avoid unwanted terms on the basis that someone acting on his behalf purchased the phone for his benefit. *See, e.g., Dye v. Tamko Bldg. Prods., Inc.*, 275 F. Supp. 3d 1314 (M.D. Fla. 2017) (applying *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997)) to enforce arbitration agreement against consumers, where they never bought the product or saw the agreement that came with the product, because

the product was purchased *for* the consumer by a third party roofing company). Therefore, under seminal Seventh Circuit precedent in *ProCD* and *Hill*, Plaintiff's claims must be compelled to arbitration.[1]

## II.   ARGUMENT

### A.   The Note7 Arbitration Agreement is Enforceable, Regardless of Whether the Phone Was Personally Purchased by Plaintiff or Was Instead Purchased For His Use by His Father/Employer

Plaintiff's argument that the Arbitration Agreement for his Note7 is not valid because he did not personally purchase his phone misses the mark for multiple reasons.

*First*, Plaintiff badly mischaracterizes cherry-picked precedent from the Ninth Circuit (which explicitly rejected application of well-established Seventh Circuit law), while omitting any discussion at all of the directly relevant precedent that applied controlling Seventh Circuit law to compel arbitration on the same or similar facts to those at issue here. Under the controlling law and facts in this case – not Plaintiff's fanciful version of them – the Arbitration Agreement is plainly valid. Plaintiff cannot seriously dispute this point, and thus spends the majority of his Opposition brief arguing that the fact that his parents/employer purchased the

---

[1] Remarkably, Plaintiff claims that Samsung's position has evolved after it learned at the initial hearing that Plaintiff had not purchased the phone (Pl. Br. at 4), but Samsung was surprised because *Plaintiff* had alleged in his original Complaint that *he had* purchased the phone. *See, e.g.,* Initial Compl. [Dkt. #1] at Count I, ¶ 2 (alleging, *inter alia*, that Samsung is engaged of the business of selling and manufacturing "the Galaxy Note 7 cell phone ***purchased and used by Michael Taylor***") (emphasis added); Count IV, ¶ 6 (alleging that Defendant's alleged misrepresentations and omissions regarding the safety of the Note7 smartphone "were likely to deceive ***a reasonable purchaser, like Michael Taylor***...") (emphasis added), Count IV, ¶ 8 (alleging that "[h]ad plaintiff known that the … Note 7 … posed a significant safety and life-threatening defect, ***he would not have purchased it***.") (emphasis added). It is therefore not Defendants' position that has evolved; rather, Plaintiff has altered facts and dropped allegations from his original complaint pertaining to a breach of implied warranty to try to purposefully avoid arbitration. *See also* Defs.' Memo. at 14 n.8 (outlining differences between Plaintiff's original Complaint and Amended Complaint, and noting the deletion of several admissions in the amended pleading as a clear effort to avoid arbitration). Plaintiff's shifting allegations illustrate gamesmanship; but they do not alter the core facts or enforceability of the Arbitration Agreement against him, as an intended user and beneficiary of the phone purchased for him by his father/employer.

3

6950161v.1

phone for him somehow allows him to circumvent any terms and conditions that accompanied the phone.

*Second*, Plaintiff's primary line of defense is to ignore the fundamental fact that his Note7 was purchased by his family/employer specifically for his use and to essentially cast himself as a "remote user" of the phone against whom it would be unfair to enforce the Arbitration Agreement. This attempted end-run around the terms and conditions that govern use of his phone is unavailing, and courts have regularly held that this is the type of scenario that binds the intended user of a product to the terms and conditions for that product regardless of whether the user personally purchased it. To hold otherwise would "mean that purchasers can deny unwanted terms, as long as they avoid reading them prior to purchase and then have the product delivered to someone else." *Dye*, 275 F. Supp. 3d. at 1320 (quoting *Hoekman v. Tamko Bldg. Prods., Inc.*, 2015 U.S. Dist. LEXIS 113414 at *20, 2015 WL 8481471 at *7 (E.D. Cal. 2015). "With good reason, prior courts have rejected this outcome." *Id.* This Court should do the same.

    1. *Norcia Does Not Apply, But in Any Event Confirms that the Arbitration Agreement is Enforceable*

As an initial matter, Plaintiff relies heavily on *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1282 (9th Cir. 2017), which does not help him on either the facts or law. In *Norcia*, the Ninth Circuit applied California law, and expressly noted that California courts had not adopted the Seventh Circuit's principles articulated in *Hill* regarding enforceability of in-the-box consumer agreements. *Norcia*, 845 F.3d at 1290 ("Because California courts have not adopted the principle set forth in *Hill* ... we reject Samsung's argument that Norcia reasonably assented to the arbitration provision because he failed to opt out of the arbitration provision

contained in the product box.").[2]  In stark contrast, under controlling Seventh Circuit and Illinois law applied in *McNamara v. Samsung Telecomms. Am., LLC*, No. 14-C-1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014), Judge Leinenweber compelled arbitration of the plaintiff's claims in that case under the very same arbitration agreement that accompanied the Galaxy S4 smartphone at issue in *Norcia*. *Id.* at *1 (rejecting plaintiff's argument that "the warranty guide did not notify Plaintiffs of what conduct constituted acceptance, did not afford a meaningful opportunity to reject the terms, and was unconscionable"). Unsurprisingly, Plaintiff's Opposition does not mention *McNamara* – and certainly does not attempt to distinguish Judge Leinenweber's opinion. He cannot do so, and instead cherry-picked an out-of-state and out-of-circuit opinion in which the court actually rejected the Seventh Circuit's interpretation of in-the-box contract law to support his position. On the law alone, Plaintiff's reliance on *Norcia* is misplaced.

Plaintiff's reliance on *Norcia* for its purported factual similarities fares no better. Had Plaintiff wanted to see how the facts in *Norcia* specifically relating to the Galaxy S4 would play out under Seventh Circuit and Illinois law, he could have cited *McNamara*. He did not, for obvious reasons. Judge Leinenweber compelled arbitration of claims relating to the Galaxy S4 – the same phone at issue in *Norcia.* Unlike the Note7 packaging at issue here, *Norcia* involved an older smartphone where the packaging neither highlighted the existence of important "terms and conditions" on the outside of the box and title page of the Warranty Guide, nor specifically called out the Arbitration Agreement and 30-day opt-out period at the front of the Warranty Guide. *Compare Schmidt v. Samsung Electronics America, Inc.*, 2017 WL 2289035 (W.D. Wash. 2017) *with Norcia*, in which the *Schmidt* court noted "In the instant case, Defendants have cured

---

[2] Since *Norcia*, California state courts have confirmed that California courts <u>do</u> apply the principles in *Hill*. *See Chau v. Pre-Paid Legal Servs., Inc.*, No. B270277, 2017 WL 604721, at *3 (Cal. Ct. App. Feb. 15, 2017), and *Schuldner v. ITC Fin. Licenses, Inc.*, No. A150522, 2018 WL 416839, at *7 (Cal. Ct. App. Jan. 16, 2018).

many of the defects in *Norcia*" relating to notice of terms and conditions accompanying the Note7 device. *Schmidt*, 2017 WL 2289035 at *4. Even under the Ninth Circuit's high standard set forth in *Norcia* for in-the-box contract formation under California law, the Note7 Arbitration Agreement has been held to be enforceable. *See Schmidt*, 2017 WL 2289035, at *4 (concluding that a "reasonable person" who purchased or received a Note7 "was on notice of the arbitration agreement, and thus Plaintiffs assented under California law"; and compelling Washington plaintiffs to arbitration because Washington law incorporated the principles in *Hill*). Plaintiff's Opposition does not mention *Schmidt* either – even though the court in *Schmidt* enforced the same arbitration agreement for the same phone at issue in this case under *both* the higher contract formation standard by the Ninth Circuit for California law *and* the seminal formation standard articulated by the Seventh Circuit in *Hill*. In sum, Plaintiff's reliance on *Norcia* is badly misplaced and only confirms that the controlling precedent and facts in this case compel a different outcome; and Plaintiff's failure to so much as mention, much less attempt to distinguish, *McNamara* or *Schmidt* in that discussion is telling. Both cases are dispositive on the issue of whether an agreement was formed on the facts of this case.

   2. *<u>Plaintiff is Bound by the Arbitration Agreement Under Agency Principles Because His Family/Employer Purchased the Phone Specifically for His Use</u>*

As discussed above, the Note7 Arbitration Agreement is plainly enforceable under Illinois and Seventh Circuit law. To get around that hurdle, Plaintiff amended his complaint – *after* Samsung initially filed the motion to compel arbitration – to allege that his family/employer bought the phone specifically for him and that he in fact used the phone as intended. His shifting allegations do not change the outcome, because his claims are still unambiguously subject to arbitration. Unsurprisingly, courts applying agency law principles have held that arbitration

6

agreements for consumer products that are enforceable as to an *agent* of the consumer are likewise enforceable as to the consumer. For example, in the *Tamko* cases, *supra* and *infra,* where a homeowner's agent (such as a contractor) purchased roofing shingles that came with an arbitration agreement that was otherwise enforceable, courts have invoked *Hill* and *ProCD* along with traditional agency principles to repeatedly enforce those arbitration agreements against the consumers who neither personally purchased the products nor viewed the terms and conditions that accompanied them.

Plaintiff concedes that the phone was purchased specifically for his use and benefit by his family/employer. Further, Plaintiff does not (and cannot) seriously dispute that he is in an agency relationship with his family/employer who purchased the phone on his behalf, and his attempt to distinguish the cases on point is unavailing. With respect to *American Family Insurance*, 178 F. Supp. 3d 1121, (D. Colo. 2016), Plaintiff contends that even the "most cursory reading of" the case distinguishes it; but cursory is apparently the only reading Plaintiff gave it. There, as is the case here, the plaintiff alleged that "an essential element [was] lacking ... because its insureds [homeowners] newer saw any of the bundles of shingles to which the arbitration provision was affixed." 178 F. Supp. 3d at 1125-26. The shingles were purchased by the contractor *for* the homeowners and installed by a subcontractor, and the court did not (as Plaintiff states) deem the homeowners to have had actual or constructive notice of the terms that accompanied the shingles. *Id.* at 1126. Instead, actual and constructive notice was imputed to them by virtue of their agency relationship with the roofer. *Id.* The court held that "**whether the insureds themselves actually consented to the arbitration clause is irrelevant**," because the agent's "conduct binds the insureds as principals to the contract." *Id.* (emphasis added). Where one is acting within the scope of his or her authority on behalf of another – as Plaintiff's parents and

7

employer plainly did so here in purchasing the Note7 as an employee "benefit" and "tool" for Plaintiff's use – it is self-evident that the terms and conditions associated with that device also bind the person on whose behalf the device was purchased (here, Plaintiff).

Numerous other courts presented with similar facts have agreed. *E.g., Dye*, 275 F. Supp. 3d at 1319 (holding that consumers were bound to arbitration agreement even though they did not see it, where their agents purchased the shingles and entered into valid arbitration agreement) (citing *Hill*, 105 F.3d at 1148); *see also Krusch v. Tamko Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 588-90 (M.D. N.C. 2014) (same); *Hoekman*, 2015 U.S. Dist. LEXIS 113414 at *10 (where plaintiffs alleged that they "never saw nor agreed to any arbitration clause" in shingles that were delivered to the contractors working on their home, enforcing arbitration agreement that came with the shingles against the plaintiffs because "[w]hether or not the Plaintiffs actually read the warranty is irrelevant") (quoting *Hill*, 105 F.3d at 1148 ("A contract need not be read to be effective; people who accept [the contract] take the risk that unread terms may in retrospect prove unwelcome.")). In *Dye*, for example, the plaintiffs alleged that their roofers purchased and installed the shingles on their homes and that they were not bound to arbitrate claims relating to the shingles because defendant "cannot establish that Plaintiffs assented to the arbitration agreement because Plaintiffs' roofers purchased and installed the shingles and, therefore, Plaintiffs were unaware there was an arbitration agreement." *Id.* at 1318. Relying on both the Seventh Circuit's seminal precedent in *Hill* as to the enforceability of in-the-box contracts and traditional agency principles, the court rejected that argument and held "the roofers' knowledge concerning the existence of the Limited Warranty containing the arbitration provision is imputed to Plaintiffs." *Id.* at 1321-22. The court also rejected the argument that the roofers were not specifically authorized to enter into an arbitration agreement, noting that agents acting within the

8

scope of their authority "can bind a principal to an arbitration agreement just like any other contract." *Id.* at 1322 (citations and quotation marks omitted).

Moreover, the Seventh Circuit, in *In re Oil Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*, 659 F.2d 789 (7th Cir. 1981), concluded that a non-signatory was bound to an arbitration provision due its agency relationship with the signatory, and observed that "[i]t would advance neither judicial economy nor the purposes of the federal arbitration act to permit [the non-signatory] to assert in a judicial forum claims grounded upon its alleged relationship to [the signatory] and to allow it to disavow the relationship for purposes of arbitration…." *Id.* at 795–96. Here, similarly, Plaintiff cannot claim on the one hand that the Note7 was an employee benefit, while on the other hand shield himself from the limitations associated with his agency relationship by disavowing the employment/agency relationship solely to avoid arbitration. *Cf. Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743–44 (7th Cir. 2010) (holding agents, such as employees, can be covered under "an arbitration agreement between their principal and a third party").

### 3. *Plaintiff was the Intended "User" of the Note7, and is Thus Bound by the Arbitration Agreement as a Third-Party Beneficiary*

Plaintiff's assertion that he is not a third-party beneficiary to the Arbitration Agreement because there was no *express* intent to benefit a third party in the agreement is similarly unavailing. *See* Pl. Br. at 17. As evidenced by the cases Plaintiff cites, intent to benefit a third party may be shown by either express language in the contract identifying the third-party beneficiary or by an implied showing that the contract applies to third parties. *E.g., Quinn v. McGraw-Hill Cos., Inc.*, 168 F.3d 331, 334 (7th Cir. 1999). The terms and conditions that came with Plaintiff's Note7, including the Arbitration Agreement, reflect the unambiguous intent that "users" of the product – such as Plaintiff, who concedes he is an intended and foreseeable user

9

for whom the phone was specifically purchased – are an intended beneficiary of and bound by those terms and conditions.

The Terms and Conditions are not, as Plaintiff contends, limited to the purchaser. Indeed, the title page of the Warranty Guide for the Note7 states that it "contains important terms and conditions with respect to your device" and that "by *using* this device, you accept those terms and conditions." Rowden Decl., ¶ 6; Ex. 1 (Warranty Guide) (emphasis added). This language, linking "you" to the "user," is employed throughout the Warranty Guide. *See, e.g., id.* at p. 2 ("READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.").[3] The suggestion by Plaintiff that he cannot be a third-party beneficiary because his name is not specifically included in the text of the Warranty Guide ignores the reality of modern-day consumer transactions and the well-established body of Seventh Circuit law, including *Hill*, upholding in-the-box consumer agreements.[4] Plaintiff is admittedly the intended and actual "user" of the Note7, and the Warranty Guide is unambiguously directed at, and for the benefit of, Plaintiff and other individuals in precisely his situation.

The Northern District, in recently holding a defendant could enforce an arbitration provision as a third-party beneficiary, noted, "[i]t is not necessary that the beneficiary be identified by name in the contract, but it must be identified in some manner, for example, by describing the class to which it belongs." *Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 WL

---

[3] *See also, e.g.*, Rowden Decl. Ex. 1 (Warranty Guide) at p. vi ("USING CUSTOM OPERATING SYSTEM SOFTWARE MAY CAUSE YOUR DEVICE AND APPLICATIONS to WORK IMPROPERLY. YOUR CARRIER MAY NOT PERMIT USERS TO DOWNLOAD CERTAIN SOFTWARE...."); *id.* at p. 9 ("FCC Part 15 Information to User"); *id.* at p. 20 ("End User License Agreement"); *id.* at p. 15 ("Consult your User Manual and your local cellular service provider.").

[4] As a practical matter, Samsung could not be expected to identify individual users for millions of devices with more specificity than by categorizing them as "users." It is, moreover, ironic that Plaintiff alleges throughout his First Amended Complaint that he was a foreseeable user and predicates all of his claims on the fact that his use of the phone was foreseeable, yet Plaintiff tries to run from Samsung's clear inclusion of "users" as an intended beneficiary of the terms and conditions of the phone on the basis that there was no intention that the benefits and limitations associated with the phone would apply to foreseeable users like himself. Plaintiff cannot have it both ways.

656082, at *3 (N.D. Ill. Feb. 1, 2018) (quoting *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 734–35 (7th Cir. 2005) (interpreting Illinois law)). Here, the class described throughout the Warranty Guide is the "user," a category to which Plaintiff admittedly belongs. If the Warranty Guide was intended to apply only to the "purchaser" of the smartphone, it could have so stated. *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning.") (citation omitted). Instead, the repeated references to "user" reinforce the inevitable conclusion that the Warranty Guide, taking into consideration the practical realities of modern-day consumer goods, contemplated that a Note7's "user" might not have personally purchased the product, but should nonetheless benefit from, and be bound to, the product's terms and conditions (including its limited warranty). *See Brown*, 2018 WL 656082, at *3 ("Defendant is entitled to enforce the arbitration provision in the Agreement plaintiffs signed because it is susceptible to the interpretation that the parties intended that nonsignatories would derive benefits from it, as Illinois law requires.") (citation omitted).

Further, the Arbitration Agreement actually draws a distinction between "you" and "the first consumer purchaser" of the Note7. The Agreement states, "***You*** may opt out of this dispute resolution procedure by providing notice to SAMSUNG no later than 30 calendar days from the date of the ***first consumer purchaser's*** purchase of the Product." (bold and italics added; underline in original). Even without the additional context of the Warranty Guide's repeated references that link the "user" and "you," a plain reading of this provision demonstrates that the opt-out provision applies to "you," as the "user" of the Note7, even if the "user" is a different individual than the "first consumer purchaser." *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (finding "that a document should be read to give effect to all its

11

provisions and to render them consistent with each other" to be a "cardinal principle of contract construction").

With regard to whether Plaintiff is a third-party beneficiary here, *Tolbert v. Coast to Coast Dealer Servs., Inc.*, 789 F. Supp. 2d 811 (N.D. Ohio 2011), is a much more apt comparison than the *Wallace* case on which Plaintiff principally relies. In *Tolbert*, the court concluded a plaintiff who had received a used automobile as a gift was bound to the relevant vehicle service agreement, including its arbitration provision, under a third-party beneficiary theory. *Id.* at 817. There, as here, the defendant argued "that Plaintiff … is bound, even though a non-signatory, because she is a third party beneficiary. As she seeks to accept the benefits of the contract, she must also accept the burdens, which include the arbitration provision. The court finds this argument well-taken." *Id.* at 817 (recognizing Sixth Circuit's adoption of non-signatory theories set forth in *Thomson–CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).[5] Here, Plaintiff does not dispute that by using his Note7, he accepted the benefits of the smartphone – indeed, he describes the Note7 as a "tool" and a "benefit." Pl. Br. at 5. It is difficult to imagine a more prototypical example of a third-party beneficiary than a family member or employee who is provided a smartphone specifically for his direct use. As a third-party beneficiary to the Note7 and its Warranty Guide, Plaintiff "must also accept the burdens," including the Arbitration Agreement. Compelling Plaintiff's claims to arbitration pursuant to third-party beneficiary principles is thus proper under these circumstances.

---

[5] The Seventh Circuit has also followed the Second Circuit in recognizing that arbitration agreements can be enforced against non-signatories under certain legal theories, such as agency and estoppel. *See Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999); *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682 (7th Cir. 2005).

### 4. *Similarly, Defendants May Compel Arbitration of Plaintiff's Claims Under Estoppel Principles*

Plaintiff argues that to prevail on a direct-benefits estoppel theory, the non-signatory must have had "actual knowledge of the contract containing the arbitration clause." Pl. Br. at 15 (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)). It is far-fetched that a smartphone user in today's society would not understand that terms and conditions govern the smartphone's use. And certainly there is no legal precedent for a person avoiding a particular contractual provision just because he or she did not read it. But in any event, as the case on which Plaintiff relies states, "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling*, 620 F.3d at 473 (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006) (alteration in original) (internal question marks omitted). This is precisely the situation here. Plaintiff, during the life of the Note7, embraced the smartphone by using it, despite his non-signatory status.[6] Now, during litigation, he is attempting to repudiate the arbitration clause in the contract. Plaintiff cannot have it both ways, and should be estopped from denying the existence of the Arbitration Agreement. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) ("A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause.").

---

[6] Based on the documents produced by U.S. Cellular, from August 16, 2016 to September 16, 2016, Plaintiff (line XXX-XXX-3976) made 212 phone calls (totaling 605 minutes), sent 967 text messages and used 3.024 GB of data. Plaintiff alleges the incident Note7 was purchased on August 16, 2017 and his injury occurred on September 13, 2016. *See* Dkt. #32-4, at p. 131 of 174. Therefore, it is a reasonable assumption that Plaintiff used his Note7 for all of these calls, texts and data transmissions.

6950161v.1

**B.      Plaintiff Ignores that the Arbitration Agreement Delegates "Gateway" Issues of Arbitrability to the Arbitrator**

As discussed in Defendants' Memorandum, the Arbitration Agreement assigns "gateway" questions of arbitrability – including its scope and whether any contract defenses apply – to the arbitrator. *See* Defs.' Memo. at 10; Rowden Decl. Ex. 1, p. 22 (the Arbitration Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this arbitration provision and the Limited Warranty."). Notably, Plaintiff's only response to this unambiguous provision is that there must first be a valid contract for it to be enforceable. For the reasons set forth in this Reply Brief, as well as Defendants' Memorandum, a valid contract exists here, and this Court should honor the agreement to permit the arbitrator to decide the threshold question of arbitrability. *See Rent-A-Center West v. Jackson*, 561 U.S. 63, 70 (2010) ("[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce").

It is also noteworthy that Plaintiff declines to offer any reason why his claims fall outside the scope of the Arbitration Agreement. Instead, Plaintiff purports to factually distinguish a case cited in Defendants' Memorandum – the Supreme Court's seminal decision in *Rent-A-Center* – which Plaintiff asserts Defendants "misconstrue" because it involved an "existing contract" whereas the present one does not. *See* Pl. Br. at 12-13. While the parties disagree whether a contract exists, that does not mean Defendants "misconstrued" the proposition for which *Rent-A-Center* and its progeny stand – namely, that parties can agree to arbitrate "gateway" issues. *See Rent-A-Center*, 561 U.S. at 68-69; *Air Line Pilots Ass'n, Intern. v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002). Here, that is precisely what the Arbitration Agreement does. Because "[t]here can be no doubt that the parties' Arbitration Agreement delegates issues of arbitrability to an arbitrator, not a court" (*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205,

208 (2d Cir. 2005)), and Plaintiff fails to offer any argument as to why his claims do not fall within the scope of the Agreement, the Court should assign any arbitrability questions to the arbitrator to decide in the first instance.

### C. The Arbitration Agreement is Not Procedurally Unconscionable

The question of unconscionability has been delegated by the Agreement to the arbitrator, but should the Court decide the issue, the Agreement is not unconscionable. Plaintiff contends the Arbitration Agreement is procedurally unconscionable[7] "because it was buried on the 21st page" of the Warranty Guide and "Samsung knew [it] would never reach the eyes of a remote user." Pl. Br. at 14. Defendants' Memorandum anticipated this claim and discussed it at length, noting that such factors are insufficient, on their own, to establish procedural unconscionability—particularly where, as here, the Arbitration Agreement and opt-out provision were conspicuously disclosed in multiple locations in the Warranty Guide, including the second page. *See* Defs.' Mem. at 17-20; Rowden Decl. Ex. 1, p. 2. Moreover, under Texas law, which applies to the Arbitration Agreement, courts have rejected the argument that an arbitration provision is unenforceable merely because the plaintiff did not actually sign the contract containing the provision. *In re FirstMerit,* 52 S.W.3d 749, 755-56 (Tex. 2001). *See Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 301 (Tex. App. 2008) (disagreeing with argument that contract with arbitration provision was procedurally unconscionable merely because it was "not signed by the [party], was not shown to have been provided to them and was buried in fine print.").[8]

---

[7] Plaintiff defines substantive unconscionability as well, but does not identify any alleged substantive unconscionability in the Agreement. *See* Pl. Br. at 13-14. Accordingly, Plaintiff should be deemed to have waived any argument that the Arbitration Agreement was substantively unconscionable.

[8] In *McNamara*, Judge Leinenweber dismissed plaintiff's argument that Samsung's arbitration agreement was unconscionable under Illinois law, finding that it was neither procedurally nor substantively unconscionable. *McNamara*, 2014 WL 5543955 at *2. The same should be found here.

Plaintiff also advances the questionable theory that the Arbitration Agreement is unconscionable because Defendants are seeking to enforce it against "phone users [they] never reasonably expected to know such a clause ever existed." Pl. Br. at 4. This argument is circular and ill-founded. Unconscionability does not arise simply because a party to the agreement is seeking to enforce it against a non-signatory – otherwise, the entire body of law whereby non-signatories can be bound to such provisions, discussed *supra*, would be void. Plaintiff implies a nefarious or deceptive reason behind the Agreement – claiming "Samsung knew a remote user would never lay eyes on these words" (Pl. Br. at 14) – but ignores that the Agreement is expressly directed at "users." There is no basis for finding oppression or unfairness in the negotiation process leading to the Agreement's formation, which is required to establish procedural unconscionability under the "stringent standard" required by Texas law. *See Johnson v. AT&T Mobility, LLC*, 2010 WL 5342825, at *4 (S.D. Tex. Dec. 21, 2010); *see also Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement."). In light of the foregoing, Plaintiff fails to meet his burden of proving why the Agreement should not be enforced. *Johnson*, 2010 WL 5342825, at *4.

### D. Plaintiff Declines to Challenge SEC's Status as an "Affiliate" Under the Arbitration Agreement

Without any evidence, Plaintiff claims SEC was "intentionally" not named in the Warranty Guide "for obvious reasons attempting to limit warranty exposure." *See* Pl. Br. at 19-20. However, Plaintiff completely disregards the actual language of the Arbitration Agreement, which expressly applies "to claims against [SEA's] employees, representatives ***and affiliates*** if any such claim arises from the Product's sale, condition or performance." Rowden Decl. Ex. 1,

16

p. 22 (emphasis added). The Court need venture no further than this plain language to find, as other courts have, that SEC is an "affiliate" of SEA and can therefore enforce SEA's Arbitration Agreement with respect to Plaintiff's claims. *See, e.g., Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035 (W.D. Wash. May 25, 2017) (concluding "SEA's parent companies plainly fall within the realm of SEA's affiliates. Thus, SEC … can enforce SEA's arbitration agreement…."). Plaintiff conspicuously omits any reference to the "affiliate" language in the Warranty Guide, relying instead on his argument that the agreement does not apply to third-parties/non-signatories—which, for the reasons discussed above, is unavailing. As a matter of law, SEC, as SEA's parent and undisputed affiliate, can lawfully enforce the Arbitration Agreement to the same extent as SEA. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 211 (3d Cir. 2007) ("[defendant] has clearly alleged a prima facie case of entitlement, as an 'affiliate' … under the Agreement, to a stay pending arbitration").

## III. CONCLUSION

For the reasons stated above, and in Defendants' underlying Motion and Memorandum of Law, the Court should order Plaintiff to submit his claims to binding arbitration and stay all proceedings pending the outcome of any such arbitration.

SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.

/s/ David M. Holmes
David M. Holmes
Erik J. Tomberg
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550
david.holmes@wilsonelser.com
erik.tomberg@wilsonelser.com

DATED: March 13, 2018

6950161v.1

## CERTIFICATE OF SERVICE

      I hereby certify that, on March 13, 2018, I filed electronically the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                              /s/ Erik J. Tomberg